# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| BILLY JOSEPH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 20-1072-JDT-cgc |
| | ) | |
| HARDIN COUNTY, TENNESSEE, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER TO MODIFY THE DOCKET,
## DISMISSING COMPLAINT, AND GRANTING LEAVE TO AMEND

---

On March 17, 2020, Plaintiff Billy Joseph Smith, who is incarcerated at the Hardin County Correctional Facility in Savannah, Tennessee, filed a *pro se* complaint under 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis* in the U.S. District Court for the Eastern District of Tennessee.[1]  (ECF Nos. 1 & 2.)  Chief U.S. District Judge Pamela L. Reeves transferred the case to this district, where venue is proper, on March 31, 2020.  (ECF Nos. 7 & 8.)  On April 1, 2020, this Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b).  (ECF No. 11.)

---

[1] Smith appears to list his "children & family" as additional plaintiffs.  (*See* ECF No. 2 at PageID 4.)  He does not, however, actually assert any claims on behalf of anyone other than himself.  The Clerk therefore properly recorded Smith as the only Plaintiff in this matter.

Smith sues Hardin County; "Savannah Law Enforcement"; the "Court System"; the Hardin County Correctional Facility (Jail); Subway; Pizza Hut; "All Dispatch"; "maybe the court-appointed attorneys, not sure"; "the different people on my booking papers[,]" affidavit, "warrants[,] and others"; "several police officers"; and "many more" with regard to events during his incarceration at the Jail since November 2017.  (ECF No. 2 at PageID 4, 6 & 7.)  The Clerk shall MODIFY the docket to add the following Defendants:  attorneys Ben Harmon and Frankie Stanfill, Judge Daniel L. Smith, Judge Creed McGinley, Jail Administrator Tracy White, Hardin County Sheriff Johnny Alexander, and Chief Deputy Mike Fielder.[2]  (*Id.* at PageID 6-7.)

Smith's complaint asserts a litany of complaints relating to the conditions of confinement at the Jail, his history of criminal charges that he believes are unfounded, and personal challenges.  (*See* ECF No. 2 at PageID 6 to ECF No. 2-1 at PageID 42.)  He seeks restitution and "computation" (perhaps meaning compensation) "or whatever."  (ECF No.

---

[2] The complaint names these individuals without specifying their positions.  However, "Danny Smith" is likely Hardin County General Sessions Court Judge Daniel L. Smith.  *See* www.tncourts.gov.court/general-sessions-courts/judges/daniel-l-smith.  Creed McGinley is a Circuit Court Judge for the 24th Judicial District of Tennessee, which includes Hardin County.  *See* www.tncourts.gov/courts/circuit-criminal-chancery-courts/judges/ charles-creed-mcginley; *see also* Tenn. Code Ann. § 16-2-506(24).  The full names and current titles of Alexander, Fielder, and White are found on the Hardin County Sheriff's Department website.  *See* www.hardincosheriff.com/our-department/.  Ben Harmon is an attorney, *see Candidate for chancellor vows to keep politics out of courtroom*, THE COURIER, July 17, 2020, http://www.courieranywhere.com/2020/07/17/ candidate-for-chancellor-vows-to-keep-politics-out-of-courtroom/, and likely is/was one of Smith's defense attorneys.  Frankie K. Stanfill is an Assistant Public Defender.  *See, e.g., State v. Davis*, 2015 WL 5813394 (Tenn. Crim. App. Oct. 5, 2015) (identifying Stanfill as an Assistant Public Defender).

2-1 at PageID 42.)  For the reasons explained below, Smith fails to state any claim on which relief may be granted.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.  8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

> Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983, which provides:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Official Capacity Claims against Defendants McGinley, Harmon, and Stanfill*:  To the extent Smith intends to sue Judge McGinley and Defendants Harmon and Stanfill for money damages in their official capacities, the claims are treated as claims against their employer, the State of Tennessee.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

*Claims against Hardin County and the Jail and against Sheriff Alexander, Mike Fielder, and Tracy White in their Official Capacities*: Smith names both Hardin County and the Jail as Defendants. Any claims asserted against the Jail, however, are also considered claims against Hardin County. *See generally Hafer v. Melo*, 502 U.S. 21 (1991). Likewise, any claims brought against Defendants Alexander, Fielder, and White in their official capacities are treated as claims against the County itself. Hardin County, however, may be held liable *only* if Smith's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate such municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that

5

his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).  Smith does not allege he has been deprived of a right because of a Hardin County policy or custom.

> <u>*Claims against Savannah Law Enforcement and "All Dispatch"*</u>:  Plaintiff names Savannah Law Enforcement and "All Dispatch" as Defendants.  (ECF No. 2 at PageID 4 & 6.)  Governmental departments and divisions are not separate, suable entities.  Therefore, to the extent Smith's claims against Savannah Law Enforcement and "All Dispatch" are intended as claims against the Savannah Police Department, the Court construes them as claims against the City of Savannah.  *See Hafer*, 502 U.S. 21.  *See also Buffer v. Frazier*, No. 14-2497, 2015 WL 1637915, at *1 n.1 (W.D. Tenn. Apr. 13, 2015).  Again, as noted *supra*, a local government "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  Rather, a city's liability for constitutional deprivation must be based upon a direct causal link between one of its policies or customs and the alleged constitutional deprivation.  *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  *Accord Alkire*, 330 F.3d at 815.  Here, the complaint's disjointed allegations cannot reasonably be

6

construed as setting forth any municipal policy or custom, let alone one by which Smith incurred a particular injury.

Furthermore, beyond his failure to allege a municipal policy that worked a constitutional deprivation upon him, Smith does not identify and name any officers or dispatch employees of the Savannah Police Department.  *See generally Iqbal*, 556 U.S. at 676 (2009) ("[A § 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  He fails to state a claim against Savannah Law Enforcement and "All Dispatch" for this additional reason.

*Claims against Subway and Pizza Hut*:  Smith states that following his release on bond after being arrested for public intoxication and stalking, he went to Subway to eat, where the cashier told him "don't worry about it" and continued to prepare his order even after he told her he had forgotten his wallet.  (ECF No. 2 at PageID 19.)  When a different Subway employee approached while Smith was eating in the restaurant and asked him to pay, he "made the choice of just leaving and paying for it the next time I was in there."  (*Id.* at PageID 20; *see also id.* at PageID 27.)  The following day, police arrived at Smith's home to escort him down to stay "a while in jail" and gave him "more bogus ass charges to make me look like a criminal."  (*Id.* at PageID 20-21.)

Smith also describes a previous incident that resulted in him being charged with assault and attempted robbery for paying a Pizza Hut delivery person with a personal check; the delivery person claimed the check was not good, but Smith asserts it was cashed

by Pizza Hut.  (*Id.* at PageID 21; *see also id*. at PageID 27.)  Smith posted bond for his release.  (*Id.* at PageID 21.)

"A § 1983 plaintiff may not sue purely private parties."  *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999).  Thus, "[i]n order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state."  *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1997).  Generally, to be considered to have acted "under color of state law," an individual must be a state or local government official or employee.  A private party may act under color of state law to establish the first element of this cause of action only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state.  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).

Based on Smith's allegations here, it strains credulity to consider Subway and Pizza Hut state actors for § 1983 purposes.  He therefore fails to state a claim for relief under § 1983 against these two Defendants.

*Claims against the "Court System" and Court-Appointed Attorneys*:  Smith names the "Court System," likely a reference to Judges McGinley and Smith, and his "Court-Appointed Attorneys," probably meaning Defendants Harmon and Stanfill.  (ECF No. 2 at PageID 4, 6.)  In several sections of the complaint, he suggests the crimes for which he

is/was incarcerated relate to drug and weapons possession in November 2017.[3]  (*See*, *e.g.*, ECF No. 2 at PageID 16-17.)  He also sets out in a disjointed manner various other criminal charges for which he was arrested and/or incarcerated at unspecified times.  (*Id*. at PageID 10 & 16-22.)  Smith states he has "spent over a half year for these charges and I am innocent."  (*Id*. at PageID 10 & 17 ("I was in the wrong place at the wrong time").)  He alleges he "didn't even get to tell my side of the story" in court.  (*Id*. at PageID 15.)  Instead, he accepted a plea deal.  (*Id*. at PageID 18.)  After being incarcerated for six months he was released; thereafter, he was arrested for public intoxication, stalking, and other charges, but was released on bond.  (*Id*. at PageID 18 & 19.)  Smith alleges they "keep putting my court dates off" with respect to his current charges.  (*Id*. at PageID 10.)  After exhaustive effort however, the Court is unable to reasonably ascertain from the complaint the chronology of Smith's criminal history or the various details of the offenses and arrests, criminal prosecutions, jurisdictions, or attorneys associated with each of the incarcerations of which he complains.

With regard to any allegations against Defendants McGinley and Smith, Smith does not have a claim to relief.  It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability.  *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012).

---

[3] The Tennessee Department of Correction website lists Plaintiff as a convicted prisoner serving a six-year sentence for a drug offense.  *See* www.apps.tn.gov/foil-app/search.jsp.

Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). The actions of McGinley and Smith[4] in presiding over various aspects of Smith's criminal cases were clearly within the scope of their judicial function, and Smith does not offer any facts to suggest otherwise. Therefore, Smith's claims against Judges McGinley and Smith are barred by judicial immunity.

As to any allegations against his defense attorneys, Defendants Harmon and Stanfill, Smith also does not have a valid claim. Though attorneys employed as public defenders are paid by the State, "public defenders do not 'act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). Moreover, courts have uniformly held that private attorneys are not state actors who can be sued under § 1983. *See Polk Cnty.*, 454 U.S. at 318 ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983"); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968) (private attorney

---

[4] Smith does not actually identify any allegedly unconstitutional actions taken by Judge McGinley, Judge Smith, or any other judge.

who is appointed by the court does not act under color of state law); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amenable to suit under § 1983"). Therefore, any claims against Smith's defense attorneys are not a basis for relief.[5]

*Claims against Johnny Alexander, Tracy White, Mike Fielder, and Other Unidentified Persons*: Though Smith names Jail Administrator White, Sheriff Alexander, and Chief Deputy Fielder as Defendants, he does not explain how these individuals played a role in the events described in the complaint or allege any misconduct by them.   When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Instead, these three Defendants appear to be sued merely because of their supervisory positions. However, under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

---

[5] Again, Smith does not specifically describe any deprivation of his constitutional rights by any particular attorneys who represented him.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

In addition, a supervisor's failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").  Smith does not allege that Defendants Tracy, Alexander or Fielder, through their own actions, violated his constitutional rights.

Smith's references to "several police officers" and "many more," (ECF No. 2 at PageID 6-7), also fail to state a claim against anyone.  *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (complaint making "only categorical references to 'Defendants'" failed to "'allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right'"); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming that, because Plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights," the complaint failed to state a claim for relief).  Smith

cannot make claims against a universe of unspecified persons who cannot be notified of claims against them.

*Court Access Claim*:   Smith states the Jail provides him with "no legal advisor or counsel to help me decide or understand."  (ECF No. 2 at PageID 8; *see also id*. at PageID 13.)  He also states he "never get[s] to see my lawyer except in the courtroom."  (*Id*. at PageID 13; *see also id*. at PageID 14 ("A court-appointed lawyer tells you to be quiet and listen to the judge . . . then directly back to the cell without even one word being said by the lawyer").)  He wants a lawyer "who abide[s] and understand[s] the laws."  (*Id*. at PageID 23.)  Smith further alleges the Jail lacks a law library.  (*Id*. at PageID 12.)

Prisoners retain a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)).  That right "extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds*, 430 U.S. at 828.  Appointment of counsel can be a valid means of fully satisfying the constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts.  *See*, *e.g.*, *Bourdon v. Loughren,* 386 F.3d 88 (2d Cir. 2004).

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim."  *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d

at 394.  *See also Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (to state a claim that the defendants interfered with his right to access the court, a plaintiff must "show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim" (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002))).  The Supreme Court has held "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher*, 536 U.S. at 415.  An actual injury is shown only where a nonfrivolous, arguable claim is lost.  *Id.*  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

"The tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  *Lewis*, 518 U.S. at 355.  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Id.* (emphasis in original).  A plaintiff's right of access to the courts with regard to his criminal case is therefore satisfied if he had the assistance of counsel for his criminal trial.  *See United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) (citing *United States v. Smith*, 907 F.2d 42, 44 (6th Cir. 1990)).

In this case, Smith does not sufficiently plead the requisite constitutional showing.

Smith makes contentions about not being "offered a law library," (ECF No. 2 at PageID 7), not having "law books," (*id*. at PageID 11), and not having "news media," (*id*. at PageID 8).  But he does not state that lack of a library hindered his efforts to pursue a

nonfrivolous legal claim.  That is, he does not describe or otherwise address the underlying cause of action in which his putative lost remedy was frustrated by not having a library or news media.  In any event, Smith's acknowledgment that he had appointed counsel in his criminal cases, (*id*. at PageID 4), belies his claim that he was denied meaningful access to the courts in those proceedings.  As federal courts have routinely recognized, appointment of counsel satisfies any obligation which a state has to provide inmates with legal assistance in their criminal cases.  *See*, *e.g.*, *Manthey*, 92 F. App'x at 297; *Bourdon*, 386 F.3d 88; *Howland v. Kilquist*, 833 F.2d 639, 643 (7th Cir. 1987); *Smith v. Cnty. of Santa Clara*, 223 F. App'x 701 (9th Cir. 2007) (pretrial detainee's access to court-appointed counsel satisfied right to meaningful access to the courts, even if the law library available to him in the county jail was inadequate).

As to his contention about speaking with his counsel only at court hearings, (ECF No. 2 at PageID 13), Smith's allegations are similarly deficient.  He does not contend that the lack of more in depth and lengthy communications with counsel in fact hindered his efforts to pursue a nonfrivolous legal claim.  Moreover, he does not even identify the underlying nonfrivolous cause of action that was frustrated by not having unfettered access to appointed counsel.[6]  Nor does he describe causally-related actual injury from it.  His allegations merely show his displeasure with the criminal justice system.

---

[6] To the extent Smith seeks to raise constitutional claims of ineffective assistance of counsel, such claims may be raised only in post-conviction or habeas corpus proceedings, not in a § 1983 action.

For all of these reasons, the complaint fails to state a claim for deprivation of the constitutional right of access to the courts.

_No Access to Recreation_:  Smith alleges he is given "no outside recreation."  (ECF No. 2 at PageID 8; _see id_. at PageID 11.)  This allegation amounts to a claim under the Eighth Amendment's prohibition on cruel and unusual punishments.  *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).  The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive inmates of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  The Sixth Circuit has recognized that prisoners are entitled to outdoor recreation sufficient to maintain reasonably good physical and mental health.  *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985).  Other courts in this circuit, however, have recognized that "there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners." *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)).  The Sixth Circuit has held only that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).  Smith offers no facts regarding the duration of the alleged deprivation of recreation.  Thus, he has not sufficiently alleged a total or near-total deprivation.  He simply states in a conclusory manner that he has "no outside recreation

16

period" at the Jail.  (ECF No. 2 at PageID 8; *see id.* at PageID 11.)  Accordingly, he fails to state a claim for relief.

*Excessive Force*:  Smith alleges, in conclusory fashion, "use of excessive force." (ECF No. 2 at PageID 25.)  "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Seiter*, 501 U.S. at 298, 303).  The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

Smith states he was pepper-sprayed because he was "kicking the door in the holding cell, (ECF No. 2 at PageID 19), and the Jail staff did "not like the noise I was making." (*Id.* at PageID 25.)  He states he "nearly died" because he had no water to wash his eyes out but does not elaborate further on any actual injury.  (*Id.* at PageID 19.)  Smith also does not identify the date this occurred, who supposedly sprayed him, or other details.  Despite the hyperbolic assertion that Smith "nearly died," there is nothing in the complaint from which the Court can plausibly infer either that the pepper-spraying was objectively harmful enough to establish a constitutional violation or that the involved officials acted with a culpable state of mind.

Smith also refers to unidentified police using a taser gun on him when they came to his home after the Subway incident.  He states that they tasered him "twice in my own home because I said I'd rather go to hell or be shot than go down to the jail with them." (*Id.*)  Even construing Smith's allegations generously, his own statement suggests the police used the taser because he was resisting arrest, which he now denies.  (*Id.*)  There is simply nothing in the complaint suggesting Smith can establish either the objective or the subjective prong of an excessive force claim.

Smith therefore fails to sufficiently plead a plausible claim for excessive force.

*Inadequate Medical Care Claim*:  Smith states he is "not getting the correct medical treatment" and has "no visits to my social workers."  (ECF No. 2 at PageID 8.)  The complaint suggests that his claims arise from not receiving mental health medications.  (*Id.* at PageID 11 ("They will not give me any of my medicines . . . for my bipolar mood swings, depression, schizophrenia, or anything"); *see also id.* at PageID 22.)

Claims regarding the denial of medical care are also reviewed under the Eighth Amendment, which prohibits cruel and unusual punishments.  *See generally Seiter*, 501 U.S. at 297.  Under *Estelle*, 429 U.S. at 104, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'' ... proscribed by the Eighth Amendment."  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.

18

That is, an Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.  The objective component requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  The subjective component requires that jail officials acted with the requisite intent—*i.e.*, had a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834; *see also Seiter*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence."  *Farmer*, 511 U.S. at 835.  A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk.  *Id.* at 837.

Smith insufficiently alleges facts demonstrating any serious medical need.  He does not describe symptoms, dates of duration, prior treatments, or other features of his putative condition(s).  He simply offers his conclusory, blanket assertions that he suffers from various mental illnesses.  Furthermore, he has not demonstrated that any specific Jail personnel had a "sufficiently culpable state of mind" and acted with "deliberate

indifference" to his condition(s).  Instead, he simply states that he has not received mental health medication.  (ECF No. 2 at PageID 8, 11 & 22.)  This contention does not satisfy the subjective prong of Eighth Amendment analysis.  He does not demonstrate any Defendant's subjective knowledge, and disregard, of an excessive risk of harm to his health.  Having failed to meet both the objective and subjective components of an Eighth Amendment claim, he fails to state a claim for constitutionally inadequate medical care.

*Claims Regarding Grievance Procedure*:  Smith suggests the grievance process at the Jail is inadequate.  (*See* ECF No. 2 at PageID 5-6 (he received a grievance response that the Jail "will check on it").)  He does not allege any arbitrary denial of access to the Jail's grievance procedure.

Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").  Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability.  *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").  Smith's contentions regarding his grievances fail to state a claim for relief.

*General Conditions of Confinement Claims*:  Smith alleges a barrage of cursory and conclusory allegations concerning many conditions of confinement at the Jail.  None state a claim for relief.

The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive inmates of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes*, 452 U.S. at 347; *Estelle*, 429 U.S. at 103-04.  A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim."  *Hudson*, 503 U.S. at 8-9.  In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but whether unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons.  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  Nothing as amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (citation omitted).

First, Smith states he has "no access to any food besides what they feed us.  Not enough for [a] 220 lb man."  (ECF No. 2 at PageID 8; *see also id*. at PageID 11 ("We have very little to eat.  The food is OK though."), PageID 13 ("It is not enough . . . so I'm always thinking about food.").)  The Eighth Amendment imposes a duty to "ensure that inmates receive adequate food" and to protect prisoners from substantial risks to their safety.  *Farmer*, 511 U.S. at 832 & 844.  Smith does not meet his pleading burden here.  He admits he receives oatmeal for breakfast with a "biscuit sometimes 2 eggs or gravy and a milk."  (ECF No. 2 at PageID 12.)  He has a main dish at lunch, such as "stroganoff or goolosh [sic]" with cornbread, vegetables, and dessert.  (*Id*.)  Dinner consists of similar courses.  (*Id*. at PageID 12-13.)  Though he would like more to eat, Smith does not allege that his health has been adversely affected by any lack of food.  Accepting his claims as colorable would require correctional facilities to meet inmates' every gastronomic demand.

Second, Smith states that inmates at the Jail "only get razors once every 2 weeks and hygiene every 2 weeks with barely enough soap."  (*Id*. at PageID 8.)  He is also dissatisfied with the amount of toilet paper at the Jail.  He does not describe any associated injuries or health problems.  (*Id*.)  The Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time' . . . is not actionable conduct."  *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000); *see Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003) (citing *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995), and *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (inmate who failed to allege "extreme

discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim)).  Here, Smith alleges only that the amount and frequency of the hygiene products provided is not sufficient—not that the Jail is refusing to provide them at all or that he has been harmed by the lack thereof.  He therefore fails to state a claim for relief.

Third, Smith states that the Jail does not "properly" wash the bathrooms, stating "it is nasty in here."  (ECF No. 2 at PageID 8.)  He also refers to the bathrooms as "molded" and "half broke."  (*Id.* at PageID 26.)  Smith does not, however, identify any associated health or hygiene problems.  (*Id.*)

"Exposure to black mold may, in an appropriate case, satisfy the objective component of an Eighth Amendment violation."  *Morales v. White*, No. 07-2018-STA-DKV, 2008 WL 4585340, at *14 (W.D. Tenn. Oct. 10, 2008).  Smith, however, does not allege he suffered injury and harm from being exposed to mold.[7]  Without that allegation, Smith affords no basis from which to plausibly infer the objective component of an Eighth Amendment claim.  *See, e.g.*, *Morales,* 2008 WL 4585340, at *14.  Moreover, he does not allege that any Defendant was actually aware of mold conditions that posed an excessive risk to his health and did nothing about them.  Not having alleged any Defendant's personal involvement in any failure to clean the bathrooms, Smith also does not meet the subjective component of an Eighth Amendment claim for exposure to black mold.

---

[7] Smith does not actually identify the mold as toxic black mold instead of a less harmful type.

Smith criticizes numerous other aspects of his confinement at the Jail, including: (1) there is "no news media or access to any reading material or games of any sort," (ECF No. 2 at PageID 8); (2) there is "no television or anything really!" (*id.*; *see also id.* at PageID 12 ("We have nothing to do")); (3) the amount of pens and writing paper provided to inmates, (*id.* at PageID 8, 12, 15 & 26); (4) the manner in which inmates' clothes are washed, (*id.* at PageID 8); (5) lack of entertainment, (*id.* at PageID 11, 12 & 26 ("[There is] nothing in . . . the dayroom . . . except a deck of cards . . . There is nothing to do except lay there and look at a tan brick wall"; and (6) regulations against smoking in the Jail. (*Id.* at PageID 11.)

These conditions that Smith describes do not amount to unconstitutional deprivation of human needs. Rather, they are ordinary discomfort from the reality of prison life. The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298; *Rhodes*, 452 U.S. at 348. He fails to state a claim for relief on these matters.

*Other Claims*: At one point in his complaint, Smith asserts there is "[n]o seperation [sic] of state and county" at the Jail. (ECF No. 2 at PageID 8.) He does not explain what he means by this allegation, but it is possible he is asserting the Jail does not separate pretrial detainees ("county"), from convicted inmates ("state"). If that is the case, he has no valid claim. Smith does not allege that housing these groups of inmates together makes the Jail inherently more dangerous or that he has been harmed in any manner as a result of the failure to separate pretrial detainees and convicted inmates.

Smith also alleges there is no separation of "church and state" at the Jail. (*Id.* at PageID 26.) Perhaps this is merely an error and he again meant to write "county and state."

24

If Smith is, however, attempting to allege a lack of separation of "church and state," he offers no explanation and the Court will not speculate on the basis of any such claim. This bare allegation also fails.

_Claims arising outside the limitations period_:  As noted, Smith does not specify the time periods pertinent to his many allegations. He has been confined at the Jail off and on since November 2017. (_See id._ at PageID 16-23.) The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)(1)(B). _Roberson v. Tennessee_, 399 F.3d 792, 794 (6th Cir. 2005). Accordingly, to the extent one or more of the complaint's claims arose more than one year before March 12, 2020—_i.e._, the date he last signed his complaint, (ECF No. 2 at PageID 24),[8] those claims may be barred by the statute of limitations.

For all of the foregoing reasons, Smith's complaint is subject to dismissal for failure to state a claim.

_Opportunity to amend complaint_:  The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a _sua sponte_ dismissal under the PLRA. _LaFountain v. Harry_, 716 F.3d 944, 951 (6th Cir. 2013); _see also Brown v. R.I._, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency

---

[8] Smith signed parts of the complaint on March 3, 2020, (_see_ ECF No. 2 at PageID 21; ECF No. 2-1 at PageID 42), but one portion was signed later, on March 12th. (_See_ ECF No. 2 at PageID 24.)

cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Smith should be given an opportunity to file an amended complaint.

In conclusion, the Court DISMISSES Smith's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, Smith is GRANTED leave to file an amended complaint. Any amendment must be filed **within 21 days, on or before March 1, 2021.**

Smith is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, must adequately identify all Defendants sued, and must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Smith fails to file an amended complaint within the time specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE